# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 13-21203-TLM |
| RONALD LEE HAZARD, and ) | |
| AMY D. HAZARD, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| S.D. SANDERS, INC., an Idaho ) | |
| corporation, and STEVE SANDERS, ) | |
| an individual, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adv. No. 14-07004-TLM |
| ) | |
| RONALD HAZARD and AMY ) | |
| HAZARD, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION
_____

Ronald Hazard ("Hazard") and his wife, Amy Hazard, filed a joint chapter

7 petition on December 13, 2013.[1] On March 18, 2014, S.D. Sanders, Inc.

("SDSI") and Steve Sanders ("Sanders") (collectively "Plaintiffs") filed the

_____

[1] Unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11
U.S.C. §§ 101–1532. References to "Rules" are to the Federal Rules of Bankruptcy Procedure
and to "Civil Rules" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

complaint commencing this adversary proceeding.  Adv. Doc. No. 1.  That

complaint asserted nondischargeability of debts under § 523(a).  Following a

hearing and oral ruling on a motion to dismiss, and pursuant to this Court's Order,

Plaintiffs filed an amended complaint.  Adv. Doc. No. 18 ("Complaint").

Plaintiffs' Complaint asserts § 523(a)(2), (4) and (6) claims against Hazard only.

Amy Hazard was therefore dismissed as a defendant, and Hazard answered the

Complaint.  Adv. Doc. Nos. 21–25.[2]

On April 29, 2015, Hazard filed a motion for summary judgment seeking

dismissal of the Complaint on several grounds.  Adv. Doc. No. 29 ("Summary

Judgment Motion").  The Summary Judgment Motion was supported by Hazard's

declaration, Doc. No. 33 ("Hazard Declaration"), and other submissions, and

Plaintiffs responded with their own submissions, as required under the Rules and

LBR 7056.1.  Additionally, Plaintiffs filed a "motion to strike" certain exhibits

attached to the Hazard Declaration.  Adv. Doc. No. 36 ("Motion to Strike").[3]  Both

motions were heard on June 30, 2015,[4] and were taken under advisement.  They

---

[2] The parties' pleadings agree the Court has jurisdiction over this matter, *see* 28 U.S.C. §§ 157, 1334(b), and that this is a core proceeding, *see* 28 U.S.C. § 157(b)(1), (b)(2)(I).

[3] The Motion to Strike asks the Court to strike Exs. 4–5, 8–12, 14–15 and 17 to the Hazard Declaration and all references to those targeted exhibits or to their content found in the Hazard Declaration.  However, in briefing on this motion and at hearing, Plaintiffs limited their challenge to Exs. 5, 10, 11 and 14.  The Court treats this as a modification of the Motion to Strike.

[4] Hazard did not file a response to the Motion to Strike nor a brief regarding it, but he argued in opposition to that motion at hearing.

MEMORANDUM OF DECISION - 2

are resolved by this Decision.

**DISCUSSION AND DISPOSITION**

    **A.    Summary judgment standards**

Civil Rule 56(a), incorporated in this adversary proceeding by Rule 7056, states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The evidence and inferences therefrom must be viewed in a light most favorable to the non-moving party. *Thorian v. Baro Enters., LLC (In re Thorian)*, 387 B.R. 50, 61 (Bankr. D. Idaho 2008). A dispute is genuine only if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party, and a fact is material if it might affect the outcome of the proceeding. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact, after which the opposing party must provide evidence establishing a genuine issue of material fact. *Poole v. Davis (In re Davis)*, 2012 WL 4831494, at *2 (Bankr. D. Idaho Oct. 10, 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). But even if the opposing party fails to establish the existence of disputed facts, the moving party must nevertheless establish it is entitled to judgment as a matter of law. *See North Slope Borough v. Rogstad (In re Rogstad)*, 126 F.3d 1224, 1227–28 (9th Cir. 1997) (holding the trial court erred by resting its grant of summary judgment on

MEMORANDUM OF DECISION - 3

the opposing party's failure to file a response).[5]

Additionally, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' are inappropriate at the summary judgment stage." *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 861 (9th Cir. 2011) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  And all justifiable inferences must be drawn in favor of the non-moving party.  *Anderson*, 477 U.S. at 255.

### B.    Facts

Plaintiffs' claims arise from the following course of events.[6]

Sanders and Hazard met in 2004.  They, along with another individual, Mike Harris, discussed collectively purchasing a ready-mix sand and gravel operation called MJB Materials ("MJB").  To accomplish this venture, they ultimately formed Sandstone Materials, LLC ("Sandstone").  Sandstone's operating agreement was executed in November 2004, and provided for two equal members: SDSI[7] and The Stonehill Group, Inc. ("Stonehill Group"), a corporation

---

[5]  As the Ninth Circuit BAP has noted, "Even a complete lack of opposition to a motion for summary judgment does not relieve the moving party of its obligation to meet its burden of showing entitlement to judgment as a matter of law."  *Salehi v. Global Auto. Grp., Inc. (In re Salehi)*, 2014 WL 2726149, at *4 n.7 (9th Cir. BAP, June 9, 2014) (citing *Rogstad*, 126 F.3d at 1227).

[6]  Since the Court is to construe submissions favorably to the party opposing summary judgment, much of this background is taken from Sanders' own declaration, Adv. Doc. No. 44, and other of Plaintiffs' declarations.

[7]  Sanders acknowledges that he was personally listed as a member of Sandstone on the
(continued...)

MEMORANDUM OF DECISION - 4

owned by Hazard and Harris.

Plaintiffs claim to have been unaware that Hazard and Harris actually formed another similarly-named entity, Stonehill Investments, LLC ("Stonehill Investments") to acquire the MJB business and its assets. But in furtherance of what he believed to be the nature of the Sandstone-MJB transaction, Sanders (or SDSI) advanced cash for the ultimate payment to MJB and facilitated Sandstone's obtaining a $450,000 loan from Idaho Independent Bank ("IIB") for the acquisition. Plaintiffs contend this IIB obligation was also secured by SDSI's chattel and intangible personal property assets.

In February 2005, Sanders executed a disbursement request and authorization for Sandstone to distribute the proceeds of the loan to MJB's members, to IIB, and to SDSI and Stonehill Investments. But Sanders disputes the veracity of what he was told by Hazard as to the structure of this transaction and the reason for the various payments.[8] Sanders claims that, due to various and escalating disputes among the parties, a "workout agreement" was generated in December 2007, under which SDSI would and did buy out Stonehill Group's

---

[7](...continued)

initial articles of organization filed with the Idaho Secretary of State. *See* Adv. Doc. No. 33 at 7. But both Sanders and SDSI are Plaintiffs here. And the operating agreement shows both SDSI and Stonehill Group as members of Sandstone. (It also notes, correctly, that both SDSI and Stonehill Group are corporations, even though Sanders, Hazard and Harris all signed as "managing members" for those entities.)

[8] Hazard similarly disputes much of the details.

MEMORANDUM OF DECISION - 5

member interest in Sandstone.

Sanders states that in 2008 he found out that MJB had not been acquired directly by Sandstone but, instead, by Stonehill Investments which had then sold the same to Sandstone at an inflated price.  The claimed subterfuge also included alleged misrepresentations as to appraisals and other valuations of the MJB business assets, the use and treatment of invested funds and loan proceeds, and the extent or value of Stonehill Investments' stake in MJB as it re-sold the same to Sandstone.  Plaintiffs also allege misuse of Sandstone accounts, including fabrication of a capital account thereafter used to justify distributions of Sandstone funds to Stonehill Group.  There are also contentions of forged signatures and documents.[9]

The parties further escalated their civil disputes, to the point of including assertions of criminal activities.  When the buyout of Stonehill Group's membership interest in Sandstone fell apart, Sanders threatened to go to the IRS about Hazard and Harris' allegedly illegal conduct.  Thereafter, in December 2008, Sanders was arrested by the Kootenai County Sheriff following a 2008 grand jury process in which Hazard and Harris testified regarding Sanders' alleged, illegal conduct.  Hazard provided additional testimony in April 2009.  A

---

[9]  As noted, all of this was "discovered" no later than 2008, and much came to light from 2005 on.  For example, in 2006, Plaintiffs became concerned about the Sandstone capital (and other) accounts.  And in 2007, the parties mediated disputes and developed the workout where Sandstone would either be sold to a third party or SDSI would buy out Stonehill Group's interest.

MEMORANDUM OF DECISION - 6

"second amended indictment" was filed in May 2009 against Sanders, alleging

several counts of racketeering, forgery, grand theft, falsification of corporate

books, and other charges.[10]  Sanders maintains these were all retaliatory and

contrived allegations of criminal activity designed by Hazard and Harris to

discredit and defame him and harm his reputation.  Sanders claims Hazard was

successful in driving Sandstone out of business.[11]

On July 31, 2008, Plaintiffs filed a state court law suit, Case No. CV-2008-

6073, First Judicial District, State of Idaho, Kootenai County, against Hazard (and

others).[12]  On March 19, 2009, a second amended complaint was filed.  Adv. Doc.

No. 42-1 ("SAC").  The SAC alleged Stonehill Group, Hazard and Harris,

individually and in concert: converted or embezzled funds; breached or repudiated

the operating and workout agreements; systematically and improperly removed

Sandstone funds under the guise of withdrawal of excess capital contributions;

falsified or forged documents and records; converted assets; intentionally

interfered with Sandstone's business and business opportunities; breached

_____

[10]  Adv. Doc. No. 33 at 61–68.

[11]  Plaintiffs contend that, ultimately, the county prosecutor dismissed all charges against Sanders.  Adv. Doc. No. 44 at 14 (the "Sanders Declaration").

[12]  The Idaho Supreme Court's Repository lists Kootenai County Case No. CV-2008-0006073 (*SD Sanders Inc., et al. v. Bell, et al.*).  The Repository is available online at https://www.idcourts.us/repository and is searchable by litigant name and County.  The Court may take judicial notice of these public records under Fed. R. Evid. 201(b)(2).  *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

MEMORANDUM OF DECISION - 7

fiduciary duties; trespassed; breached the implied covenant of good faith; and filed

a false police report against and spread rumors about Sanders, doing so with

malicious intent.[13]  The SAC sought declaratory relief, an accounting, monetary

damages, and injunctive relief.

The parties entered into arbitration.[14]  The state court therefore stayed the

litigation.  But arbitration did not proceed quickly.  *See* Adv. Doc. No. 42-2 at

15–16.[15]  On August 17, 2012, four years after the state court case was initially

filed and over three years after Plaintiffs' SAC was filed, the state court issued a

notice of proposed dismissal which referred to Idaho Rule of Civil Procedure

40(c), a rule addressing the dismissal of inactive cases.  Adv. Doc. No. 42-1 at 25.

Ten days later, Plaintiffs' counsel, Smith, filed an affidavit for retention, advising

the court that the parties were "actively engaged" in arbitration of "all their

disputed claims."  Adv. Doc. No. 42-2 at 1–4.  On September 17, 2012, the state

court rejected the request for retention and ordered that "all pending matters in this

---

[13]  Many of these same allegations underpin Plaintiffs' § 523(a) Complaint.

[14]  The parties' respective assertions of "fact" are often couched in language more fitting
for briefing.  This results in some uncertainty about whether this arbitration flowed from a
volitional agreement during litigation blessed by the court, or was compelled by the court on a
party's request based on prior written agreements with mandatory arbitration provisions.  *See*,
*e.g.*, Doc. No. 42-2 at 15–16 (addressing an October 2009 motion to compel arbitration but also
referencing agreement).

[15]  Hazard's state court filing in opposition to a motion to reopen the state court case
(which is attached to a declaration of Erik Smith, Plaintiffs' state court counsel) asserts a lack of
activity up to the May 2011 withdrawal of Plaintiffs' first counsel, and a lack of activity after
Smith's appearance in September 2011 to the date of the court's notice of dismissal for inactivity
almost a year later in August 2012.

MEMORANDUM OF DECISION - 8

case are hereby dismissed." *Id.* at 5.[16]

Plaintiffs sought reconsideration of that order.  On December 31, 2012, following a hearing held December 7, the state court entered an order denying Plaintiffs' request for reconsideration.  *Id.* at 6–8.  The order noted that an earlier ruling "compelled" certain of the litigants into arbitration.[17]  "Subsequently a stipulation was entered resulting in submission of *all* issues for arbitration." *Id.* at 6 (emphasis added).  While arbitration was also sluggish, it was still ongoing, and the court stated: "*All issues in controversy* are subject to resolution pursuant to the Uniform Arbitration Act." *Id.* (emphasis added).

On March 1, 2013, the arbitrator, Senior Judge George Reinhardt, issued a decision on a motion by Hazard and other respondents seeking to dismiss the arbitration under Idaho Rule of Civil Procedure 41(b) for failure to prosecute. Adv. Doc. No. 42-2 at 9–12.  The arbitrator agreed Plaintiffs had failed to pursue their claims and showed no good cause for that failure, and also noted that their counsel failed to cooperate with the respondents' counsel to prepare for the balance of the arbitration.  He found that the 1½ year delay since the appearance of such counsel was unreasonable and prejudicial to respondents.

Nevertheless, the arbitrator found that dismissal with prejudice would be

---

[16]  Not only did the August notice supporting the September order refer to Idaho Rule of Civil Procedure 40(c), a December 2012 order discussed *infra* notes that the dismissal was also under that Rule and based on prolonged inactivity. *Id.* at 7.

[17]  It is undisputed that these parties included Plaintiffs and Hazard.

unduly harsh, and he held that "this matter [*i.e.*, the arbitration] will not be dismissed at this time. However, this matter will be dismissed if the same is not diligently prosecuted in accordance with [the arbitrator's] directives[.]" *Id.* at 10.[18]

What subsequently transpired is not all together clear. Hazard contends that on June 16, 2013, the arbitrator entered a decision and award, finding for Hazard and dismissing Plaintiffs' claims. Adv. Doc. No. 42-2 at 18. However, Hazard did not provide a copy of this June 16, 2013 order. Neither did Plaintiffs, though they argued at hearing that the June 16 order addressed breach of contract claims only and all of the other contentions, including fraud, remained pending. Therefore, the Court is left with a record that does not show whether or not the arbitration concluded (in whole or part) or merely stymied.

Notwithstanding the existence of the arbitration, Smith filed a motion in state court to reopen the underlying case in October 2013. *Id.* at 3–4. An order was entered on December 11, 2013, denying Plaintiffs' request to reopen. That order was based on the state court's oral findings at a December 10 hearing. However, neither Hazard nor Plaintiffs provided a transcript of the referenced oral findings.

### C.    Summary judgment contentions

Hazard's Summary Judgment Motion asserts: (1) the applicable statutes of

---

[18]  Plaintiffs, through their state court counsel, Smith, contend that the arbitration faltered because Hazard's attorney withdrew and Hazard then appeared pro se, and refused to pay his share of Judge Reinhardt's fees. Adv. Doc. No. 42 at 3.

limitations have expired for Plaintiffs' claims; (2) the Complaint is "insufficient on its face to meet the standards for pleadings;" and (3) the undisputed facts show Hazard is entitled to judgment on each of the three counts of the Complaint.

### 1.    Statutes of limitations[19]

Hazard argues that all conduct on which Plaintiffs' § 523(a)(2), (4) and (6) claims in this adversary proceeding are predicated, is the same conduct that was at issue in the state court case and the arbitration, and took place no later than 2008. He argues that a nondischargeability determination must relate to a cognizable "claim" and urges the Court to find Plaintiffs' alleged claims are now time-barred under Idaho statutes.[20]

There are two distinct statutes of limitations issues relevant in a § 523(a) context. *Banks v. Gill Distribution Ctrs., Inc.(In re Banks)*, 263 F.3d 862, 868 (9th Cir. 2001).  One arises under Rule 4007(c) and establishes a deadline for filing the § 523(a) complaint.  It was clearly met here.

---

[19]   The statute of limitations is an affirmative defense under Civil Rule 8(c)(1) incorporated by Rule 7008.  As noted in *Bush v. Woods (In re Bush)*, 2005 WL 6960185 (9th Cir. BAP Dec. 15, 2005), an affirmative defense is generally, though not invariably, waived if not raised in a responsive pleading.  Here, Hazard's answer to the amended complaint asserts no affirmative defenses.  Adv. Doc. No. 21.  However, the initial motion to dismiss, Adv. Doc. No. 5, clearly asserts the statute of limitations defense.  The Court finds it not waived.  *Accord Boise City/Ada Cnty. Housing Auth. v. O'Brien (In re O'Brien)*, 2011 WL 1457304, at *4–6 (Bankr. D. Idaho Apr. 15, 2011) (allowing amendment of answer to assert statute of limitations as affirmative defense).

[20]   For context, the Idaho limitations period for slander is two years.  Idaho Code § 5-219(5).  The Idaho limitations period for fraud is three years from the date of discovery. Idaho Code § 5-218.  The Idaho limitations period for actions not specifically covered by other statutes (thus including, *e.g.*, malicious prosecution) is four years.  Idaho Code § 5-224.  The causes accruing here in 2008 (if not earlier) would have been subject to bar by 2010 to 2012.

MEMORANDUM OF DECISION - 11

The other relates to the underlying claim.  "[T]he establishment of the debt itself . . . is subject to the applicable state statute of limitations."  *Id.*  If an action in state court is timely filed consistent with that state's statute of limitations, the requirement is met for purposes of a later nondischargeability action, even if there has been no judgment entered by the time of the bankruptcy filing.  *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1103 n.3 (9th Cir. 2005) ("Although there is not yet a state court judgment against Sicroff arising out of the alleged defamation, we have recognized that the filing of a claim, without reducing it to a judgment, is sufficient to establish a debt for the purpose of a nondischargeability determination." (citing *Banks*)).

Here, Plaintiffs clearly lack a judgment in a timely filed and concluded state court action.  But Plaintiffs also lack a pending prebankruptcy lawsuit because their prebankruptcy lawsuit was dismissed.  The parties' arguments assume certain consequences flow from the dismissal of the state court case.  Neither, however, provided reference to applicable Idaho authorities.

### a.    Dismissal of the state court case

As will be discussed, there are some gaps in what has been presented. However, the balance of the record establishes that the state court case was dismissed in September 2012.  The motion for reconsideration of that dismissal was denied in December 2012.  At the time of the bankruptcy petition on December 13, 2013, the state court case remained dismissed and closed.

MEMORANDUM OF DECISION - 12

In *Castle v. Hays*, 957 P.2d 351 (Idaho 1998), the Idaho Supreme Court

considered a case where the dismissal was ordered under Idaho Rule of Civil

Procedure 40(c), but the district court granted a motion reinstating the action, only

to dismiss it again for the plaintiff's failure to timely serve the summons and

complaint.  The Supreme Court held:

> It has long been recognized that *a formal order dismissing an action is in effect a final judgment that puts an end to the suit.  Marshall v. Enns*, 39 Idaho 744, 230 P. 46 (1924).  Relief from such an order is limited. A party who disagrees with such an order may, within fourteen days, seek reconsideration in the trial court under I.R.C.P. 11(a)(2)(B), or the party may file an appeal within forty-two days to obtain appellate review of the dismissal order as provided in Idaho Appellate Rule 11(a)(1).  *See e.g.*, *Donaldson v. Buckner*, 66 Idaho 183, 157 P.2d 84 (1945).

*Id.*, 957 P.2d at 352 (emphasis added).  For such reasons, the Idaho Supreme Court

affirmed the dismissal of the action, but on the basis that the first dismissal was

final and the motion to reinstate was therefore untimely and should not have been

considered.  *Id.* (noting that "the case should have remained dismissed" on the

prior order).[21]

Thus, dismissal under Idaho Rule of Civil Procedure 40(c) constitutes a

"final judgment," but the language of this rule makes such a dismissal "without

---

[21]  In *Eby v. State*, 228 P.3d 998 (Idaho 2010), the Idaho Supreme Court clarified *Castle*'s holding and held that, while relief from a Rule 40(c) dismissal is limited as described in *Castle*, under proper circumstances relief could be sought under Idaho Rule of Civil Procedure 60(b).  It further emphasized that dismissal under Rule 40(c) is a "final judgment" and, thus, clarified that *Castle*'s reference to Rule 11(a)(2)(B) was not apt because that rule applies only to interlocutory orders and the proper reference would be to Rule 59(e).  *Id.* at 1002–03.  *Eby* was clear: "A dismissal under I.R.C.P. 40(c) effectively ends the claim under consideration and meets the prudential concerns behind requiring a final judgment before appeal."  228 P.3d at 1003.

MEMORANDUM OF DECISION - 13

prejudice," to wit:

> Dismissal pursuant to this rule in the case of appeals shall be with prejudice and as to all other matters such dismissal shall be without prejudice.

The Idaho Supreme Court explained that:

> The plaintiff argues that because the April 11 dismissal order was without prejudice, by virtue of I.R.C.P. 40(c), it was not a final order as would be an order for dismissal with prejudice. We disagree. Following dismissal of the action, no order remained to be entered by the district court to adjudicate the claims asserted in the complaint. The difference between a dismissal without prejudice and a dismissal with prejudice is that the former permits the plaintiff to refile the complaint as if it had never been filed, while the latter bars the refiling of the complaint.

*Castle*, 228 P.3d at 1003.

As applicable here, the dismissal of the state court action in September 2012 was final. *Eby* indicates that, because the September 2012 dismissal was final, Plaintiffs could have appealed the ruling. They did not. The motions to reconsider and to reopen the case did not extend the time for appeal of or relief from the dismissal order.

That the dismissal in 2012 was without prejudice is of no assistance to Plaintiffs. It would merely have allowed Plaintiffs to refile the action as if it had never been filed. Of course, any subsequent filing would expose Plaintiffs to applicable statutes of limitations on their various claims. And thus, as concerning Plaintiffs' state court case, Hazard's statute of limitations argument is well taken.

MEMORANDUM OF DECISION - 14

### b.    Arbitration

However, notwithstanding the dismissal of the state court case, there was

clearly a pending arbitration proceeding as to "all issues in controversy."  Plaintiffs

rely on the arbitration process to provide some relief from the statutes of

limitations.  Unfortunately, there are not enough facts for the Court to determine if

the arbitration here satisfies the statutes of limitations or not.  The parties have not

provided the Court with the arbitrator's rulings or a summary of issues remaining

before the arbitrator.  It appears some sort of ruling was issued, but without

specifics, the Court cannot analyze the extent and impact of the arbitration.[22]

Therefore, the Court cannot grant Hazard's Summary Judgment Motion on this

ground.[23]

### 2.    Inadequacy of pleadings

The second basis for Hazard's Summary Judgment Motion contends

Plaintiffs failed to meet the pleading requirements for § 523(a)(2) fraud, *see* Civil

Rule 9(b) incorporated by Rule 7009, and failed to meet the requirements of

adequate pleading under *Iqbal* and *Twombly* standards[24] as to all relief sought

under § 523(a).  *See* Adv. Doc. No. 32 at 4–6 (brief).

---

[22]   The absence of a transcript of the state court's last oral ruling in December 2013 is also problematic.

[23]   Given the denial, the Court need not reach Plaintiffs' equitable arguments.

[24]   *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

MEMORANDUM OF DECISION - 15

Earlier in this case, Debtors brought a motion to dismiss on these same grounds and the Court, while finding merit to the motion, declined to dismiss the case but instead allowed Plaintiffs an opportunity to amend.[25]  Upon a review of the current Complaint, the Court finds the underlying argument unpersuasive.  The Complaint meets *Iqbal* and *Twombly* and Civil Rule (9)(b).  The Summary Judgment Motion on this ground will be denied.

### 3.    Undisputed facts argument

Hazard's third argument suggests that, on the allegedly undisputed "facts," Hazard will prevail in his defense on the merits of the § 523(a)(2), (4) and (6) causes.  The Court has carefully reviewed the briefs, declarations and documents submitted regarding the Summary Judgment Motion.  The Court concludes that granting summary judgment on Hazard's third argument would require the Court to make impermissible credibility determinations; to fill in evidentiary gaps left by the submissions; to make inappropriate inferences favoring the movant, rather than favoring the party opposing summary judgment; to disregard information provided by the motion's opponents that create disputed issues of fact; and to weigh the evidentiary submissions.  All of these problems are fatal to a summary judgment request.  *See Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 861 (9th Cir. 2011); *see also Gugino v. Clark's Crystal Springs Ranch, LLC (In re Clark)*, 2014 WL

---

[25]  *See* Adv. Doc. No. 16 (minute entry for hearing of Aug. 28, 2014).  The Court's oral decision is incorporated here by this reference.

MEMORANDUM OF DECISION - 16

2895428, at *2 (Bankr. D. Idaho June 25, 2014).[26]

### a.    Motion to Strike

The Motion to Strike relates to the merits argument.  In reviewing the materials submitted and reaching its decision, the Court finds that whether it grants or denies Plaintiffs' Motion to Strike would have no effect on the ultimate conclusion.  This is not an appropriate summary judgment case on the "undisputed facts," whether the four challenged exhibits (and related references in Hazard's Declaration) are included or not.  As such, the Motion to Strike is rendered moot, and it will not be further addressed.

## CONCLUSION

The Summary Judgment Motion will be denied without prejudice.  The Motion to Strike is denied as moot.  The Court will enter an order consistent with this Decision.

DATED:  August 10, 2015

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[26]   As this Court stated in *Clark*, 2014 WL 2895428 at *2 n.6: "This Court has attempted (with apparently limited success) to make clear that it respects these limits on the proper use of summary judgment motions, and will deny such motions where they improperly require weighing of evidence, determining credibility, or drawing inappropriate inferences.  *See, e.g.*, *Boise City/Ada Cnty. Housing Auth. v. O'Brien (In re O'Brien)*, 2011 WL 1457304 (Bankr. D. Idaho Apr. 15, 2011)."

MEMORANDUM OF DECISION - 17