UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 13-21203-TLM |
| RONALD LEE HAZARD & AMY ) | |
| D. HAZARD, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| S.D. SANDERS, Inc., an Idaho ) | |
| corporation, and STEVE SANDERS, ) | |
| an individual, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adv. No. 14-07004-TLM |
| ) | |
| RONALD HAZARD, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### MEMORANDUM OF DECISION

S.D. Sanders, Inc. and Steve Sanders ("Plaintiffs") assert that chapter 7 debtor Ronald Hazard ("Hazard") owes debts that are nondischargeable under § 523(a)(2), (4) and/or (6).[1]  *See* Adv. Doc. No. 18 (amended complaint). The debts are disputed and unliquidated. In *S.D. Sanders, Inc. v. Hazard (In re*

---

[1] Unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532. References to "Rules" are to the Federal Rules of Bankruptcy Procedure and to "Civil Rules" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

*Hazard)*, 2015 WL 4735658 (Bankr. D. Idaho, Aug. 10, 2015) ("*Hazard I*"), this Court denied a motion for summary judgment brought by Hazard contending that adjudication of such debts in this adversary proceeding was barred by applicable statutes of limitations.[2]

On October 2, 2015, Hazard filed a second motion for summary judgment, Adv. Doc. No. 53 ("Motion"), again seeking dismissal on the basis that applicable statutes of limitations bar this action. In support of this renewed Motion, Hazard filed multiple declarations along with supporting documents, and Plaintiffs responded in kind. Adv. Docs. 55, 56, and 63. Oral argument was heard on November 16, 2015, and the Motion taken under advisement.

## DISCUSSION AND DISPOSITION

### A. Summary judgment standards

In *Hazard I*, the Court summarized the applicable summary judgment standards. *Id.* at *1–2. Those standards still apply.

### B. Facts

*Hazard I* also laid out at length the undisputed facts as established by the parties' submissions. *Id.* at *2–5. The Decision today addresses the same and, importantly, some additional undisputed facts that were not previously before the Court but established by the new submissions.

---

[2] *Hazard I* is incorporated in full by reference, though certain aspects will be specifically mentioned or emphasized.

MEMORANDUM OF DECISION - 2

Steve Sanders and Hazard, and their companies,[3] were in business from 2004 to 2008. Their business relationship deteriorated, culminating in Plaintiffs filing an Idaho state court lawsuit[4] alleging Hazard:

> converted or embezzled funds; breached or repudiated the operating and workout agreements; systematically and improperly removed Sandstone funds under the guise of withdrawal of excess capital contributions; falsified or forged documents and records; converted assets; intentionally interfered with Sandstone's business and business opportunities; breached fiduciary duties; trespassed; breached the implied covenant of good faith; and filed a false police report against and spread rumors about Sanders, doing so with malicious intent.

*Id.* at *3.

The state court resolved one issue. It affirmed a decision of an arbitrator, Senior Judge George Reinhardt ("Arbitrator"), that held the parties' so-called Sandstone Workout Agreement was neither valid nor enforceable. Adv. Doc. No. 55 at 10–15 (Arbitrator's Sept. 23, 2009 decision); *id.* at 19–21 (Nov. 16, 2009 order on application to confirm arbitration award). The state court also that same day ordered that, consistent with the parties' stipulation, "*all pending issues* in this matter are referred to arbitration before [the Arbitrator]." Adv. Doc. No. 55 at

---

[3] Sanders, an individual, is a plaintiff and so is S.D. Sanders, Inc., a corporation. The amended complaint's allegations make clear that certain of the injuries claimed were suffered by the corporation while others (such as allegedly false claims to the authorities of Sanders' criminal activity) are personal. That complaint also alleges that the corporation is now administratively dissolved and that Sanders brings the action, to the extent damages are due the corporation, as part of the statutory winding up process. For simplicity, and because greater clarity is not required at this juncture, this Decision will hereafter refer to "Plaintiffs."

[4] *S.D. Sanders, Inc., et al. v. The Stonehill Group, Inc., et al.*, Case No. CV-2008-6073, First Judicial District, State of Idaho, Kootenai County.

MEMORANDUM OF DECISION - 3

16–18 (order on pending motions following stipulation) (emphasis added).

The state court case was effectively idle for several years while the arbitration proceeded. The state court ultimately dismissed the civil case for inactivity in September 2012, four years after Plaintiffs initially filed suit, and three years after they filed a second amended complaint. Adv. Doc. No. 63-4. The state court based its dismissal on Idaho Rule of Civil Procedure 40(c), despite Plaintiffs' argument that the parties were "actively engaged" in the court-ordered arbitration of "all their disputed claims." Plaintiffs sought reconsideration, which was denied on December 28, 2012. Adv. Doc. No. 63-5.

Though the case was gone, the arbitration continued. Hazard later filed a motion to also dismiss the arbitration. That motion was brought under Idaho Rule of Civil Procedure 41(b) for failure to prosecute. The Arbitrator denied that motion on March 1, 2013. Adv. Doc. No. 54 at 49–52 (decision re: motion to dismiss). Though the Arbitrator found fault with Plaintiffs' handling of the arbitration (*i.e.*, failing without good cause to pursue the claims, failing to cooperate with Hazard's counsel, and unreasonable delay), he concluded dismissal of the arbitration with prejudice would be "an unduly harsh penalty" and that a dismissal for such reasons rather than on the merits should be avoided. *Id.* Later, in June 2013, the Arbitrator denied Hazard's motion to disqualify Plaintiffs' expert witness and granted Plaintiffs' motion to compel regarding the disclosure of several records, including Hazard's personal tax returns. Adv. Doc. No. 63-8.

MEMORANDUM OF DECISION - 4

On July 16, 2013, the Arbitrator entered a "Decision Re: Motion to Withdraw." Adv. Doc. No. 54 at 53–59. In addition to addressing withdrawal of Hazard's counsel, Regina McCrea, the Arbitrator in this decision outlined the events in the matter, which had commenced in 2009, "in order to provide a factual background . . . in the event [Plaintiffs' counsel] seeks to have this dispute litigated in [Idaho] District Court in lieu of proceeding with arbitration." *Id.* at 54. The Arbitrator explained that six days of hearing preceded his ruling that the Sandstone Workout Agreement was invalid and unenforceable. *Id.* Thereafter, between April and July, 2010, nine days of testimony and evidence was received, addressing the issues set forth in the state court case, but the hearings were "uncompleted." *Id.* Subsequently, Plaintiffs' lawyer, John Whelan, withdrew and was replaced by Eric Smith. However, the arbitration thereafter suffered significant additional delays. *Id.* at 55–56.

McCrea had served as Hazard's attorney since 2010 after Hazard's original counsel, Charles Dean, withdrew based on Hazard's inability to pay for his services. In 2013, McCrea filed a motion to withdraw as counsel on the grounds that Hazard could no longer pay for her services and owed her approximately $18,000, and also because "irreconcilable differences [had] arisen between . . . McCrea and [Hazard] concerning the production of certain tax documents to [Plaintiffs]." *Id.* at 54, 56. The order granting McCrea's motion was made on July 16, 2013, a week before the arbitration had been scheduled to recommence on

MEMORANDUM OF DECISION - 5

July 23, 2013. *Id.* at 56.

Upon granting McCrea's motion, the Arbitrator recognized that he was not in a position to continue serving as an arbitrator because Hazard was no longer represented by counsel, and the Arbitrator's compensation agreement invoiced the attorneys directly, not the parties. *Id.* at 57. The Arbitrator stated:

> At the hearing on the motion to withdraw, Ms. McCrea advised that her clients cannot pay for my services. Furthermore, she advised that her clients have, and are considering filing for bankruptcy. Based on the foregoing, the undersigned is no longer able to serve as the arbitrator in this matter and thus must recuse himself from further participation herein until such time as Respondents secure the services of an attorney who agrees to be responsible for the costs of arbitration equally with [Plaintiffs' attorney].

Adv. Doc. No. 54 at 57. The Arbitrator then opined:

> As a consequence of the strong likelihood that Respondents will no longer be represented by counsel in this matter, and that they will be unable to engage the services of an arbitrator, [Plaintiffs' counsel] is reasonably contemplating pursuing this matter in District Court, instead of seeking the resolution of this matter through the process of arbitration. The District Court case was dismissed specifically without prejudice. It is the understanding of [Plaintiffs' counsel] that the case was removed from the Court's docket of cases due to the fact that arbitration was pending. As the undersigned advised counsel during the hearing on the motion to withdraw, proceeding in District Court is not only reasonable based upon all of the facts and circumstances involved herein, it may be, in view of the financial limitations of Respondents, the only forum available to Claimants to seek relief from Respondents.

*Id.* at 57–58.

Plaintiffs thereafter filed a motion to reopen the state court case, which was heard on December 10, 2013. Adv. Doc. No. 56 at 11–38 (transcript). The state

MEMORANDUM OF DECISION - 6

court denied the motion to reopen at the conclusion of the hearing. *Id.* at 35–37.

Three days later, on December 13, 2013, Hazard and his wife filed the voluntary chapter 7 petition commencing this bankruptcy.

### C. The distinction between the dismissal of the case and continuation of the arbitration

Hazard's prior summary judgment motion contended that the claims asserted by Plaintiffs are barred by the applicable statute of limitations. This Court held in *Hazard I* that one limitation period, the Rule 4007(c) deadline for filing a § 523(c) adversary proceeding, was met. It also held that the statutes of limitations applicable to establishing the underlying debt had to be determined under state law:

> If an action in state court is timely filed consistent with that state's statute of limitations, the requirement is met for purposes of a later nondischargeability action, even if there has been no judgment entered by the time of the bankruptcy filing. *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1103 n.3 (9th Cir. 2005) ("Although there is not yet a state court judgment against Sicroff arising out of the alleged defamation, we have recognized that the filing of a claim, without reducing it to a judgment, is sufficient to establish a debt for the purpose of a nondischargeability determination." (citing *Banks* )).

*Hazard I* at *5. The applicable Idaho statutes of limitations regarding the underlying substantive claims are Idaho Code §§ 5-218, 5-219(5), and 5-224.[5]

---

[5] This Court stated in *Hazard I* at *11, n.20:

[T]he Idaho limitations period for slander is two years. Idaho Code § 5-219(5). The Idaho limitations period for fraud is three years from the date of discovery. Idaho Code § 5-218. The Idaho limitations period for actions not specifically

(continued...)

MEMORANDUM OF DECISION - 7

The Court found in *Hazard I* that the state court case, No. CV-2008-6073, had been dismissed, reconsideration of dismissal had been denied, and the case remained dismissed and closed as of the date of Hazards' bankruptcy filing. Further, this Court concluded the fact that dismissal of the state court action was "without prejudice" was of no benefit to Plaintiffs because while it would allow them to file a new action, in doing so, they would be exposed to, and fail to meet, the relevant statutes of limitations. *Id.* at *6–7.[6]

The problem that remained in *Hazard I* was due to the pendency of the arbitration proceeding after the state court action was dismissed.[7] This Court denied summary judgment because Hazard, as the proponent of that motion, had not established sufficient facts for the Court to resolve the legal issues that situation raised. *Id.* at *7.

### D. Status of the arbitration

In the Arbitrator's decision on the motion to withdraw, he unambiguously

---

[5] (...continued)
covered by other statutes (thus including, *e.g*., malicious prosecution) is four years. Idaho Code § 5-224. The causes accruing here in 2008 (if not earlier) would have been subject to bar by 2010 to 2012.

[6] As noted above, the Arbitrator may have had a different view of this issue, though his comments in the summer of 2013 were dicta. But counsel for Plaintiffs clearly saw this as a potential problem. *See* Adv. Doc. No. 56 at 25–27 (argument during hearing on motion to reopen).

[7] The pendency of the arbitration proceeding, however, would not "toll" the relevant statutes of limitations on the filing of a second action. *Wilhelm v. Frampton*, 158 P.3d 310 (Idaho 2007).

MEMORANDUM OF DECISION - 8

"recused" himself. But in doing so, at no point does he state that the arbitration is being dismissed.[8] Recusal means an adjudicator has concluded he or she cannot sit,[9] but does not suggest, require or cause a dismissal of the matter in which the recused judge (or arbitrator) was presiding. Moreover, the recusal itself was expressly not permanent; the Arbitrator specifically stated that his recusal will last *"until such time* as Respondents secure the services of an attorney who agrees to be responsible for the costs of arbitration equally with [Plaintiffs' attorney]." Adv. Doc. No. 54 at 57 (emphasis added). This is far from a dismissal of the arbitration. At best, it reflects a hiatus. The parties have provided no facts, nor applicable authorities, that suggest much less show that the arbitration was dismissed or concluded. The arbitration remained pending as of the bankruptcy petition date.

### E. Plaintiffs' ability to assert a § 523 claim

While the state court case is gone and now incapable of resurrection as a § 523 action, *see Hazard I*, the question remains whether the same situation attends the arbitration that was pending and not dismissed as of the bankruptcy filing.

---

[8] Thus Hazard's statement in a state court brief that the Arbitrator "rule[d] and dismisse[d] the Arbitration in his [Decision: RE Motion to Withdraw]," appears to be inaccurate. Adv. Doc. No. 42-2 at 18.

[9] Recusal is defined as "Removal of oneself as judge or policy-maker in a particular matter, esp. because of a conflict of interest." Blacks' Law Dictionary 1467 (10th ed. 2014).

MEMORANDUM OF DECISION - 9

### 1. Plaintiffs have a "claim"

Plaintiffs argue the pending arbitration fits within the Bankruptcy Code's broad definition of claim. The Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" *See* § 101(5)(a). Congress intended to adopt the "broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).

In this case, the arbitration was still pending at the time bankruptcy was filed. Though the Arbitrator had recused himself, that did not effect a dismissal or conclusion of the arbitration. If Hazard had hired an attorney, the order suggests that the recusal would be reversed and the Arbitrator would continue to resolve whatever claims remained. The process would then end in an arbitration award.[10]

In Idaho, either party may apply for confirmation or vacation of an arbitration award that is made under the Idaho Uniform Arbitration Act (IUAA). "Although time limitations are imposed for vacating, modifying, or correcting an award, no limitations exist in the [IUAA] which restrict the time as to when an application for confirmation of an arbitration award may be filed." *Wolfe v. Farm Bureau Ins. Co.*, 913 P.2d 1168, 1172 (Idaho 1994), *overruled on other grounds*

---

[10] *See Bingham Cty. Comm'n v. Interstate Elec. Co.*, 697 P.2d 1195, 1196–97 (Idaho Ct. App. 1985) (acknowledging the distinction between an arbitration decision (statutorily characterized as an "award") and a "judgment" by a court confirming, modifying or correcting an award).

MEMORANDUM OF DECISION - 10

*by Jackson Hop, LLC v. Farm Bureau Mut. Ins. Co. of Idaho*, 354 P.3d 456 (Idaho 2015).[11] Once a court enters an order confirming, modifying or correcting an award, a judgment or decree shall be entered, and enforced as any other judgment. *Bingham Cty Comm'n.*, 697 P.2d at 1196–97 (citing Idaho Code § 7-914).

During oral argument, Hazard seemed to argue that confirmation of an arbitration award cannot be made without an open underlying case. The Idaho Code does not support that contention. Idaho Code § 7-911 states "[u]pon application of a party, the court shall confirm an award" unless a party timely seeks to vacate, modify or correct that award. Idaho Code § 7-917 clarifies that "[t]he term 'court' means any court of competent jurisdiction of this state." Nothing in these or other sections of the IUAA indicates that such an application must be made in an underlying open case. Indeed, arbitrations can be commenced without any prior state court litigation between the parties at all. *See* Idaho Code § 7-901 (written agreement to submit controversy to arbitration is valid and enforceable); § 7-902(a) (party subject to an agreement to arbitrate where other party refuses to arbitrate may apply to court for an order requiring the parties to proceed with arbitration).

Once arbitration concluded, either party could seek judicial confirmation, vacation or modification. Under Idaho law, that could be to "any" Idaho court of

---

[11] Idaho Code § 7-911 sets no deadline for seeking confirmation of the award, but a 90 day deadline for requests to vacate, modify or correct the award.

MEMORANDUM OF DECISION - 11

competent jurisdiction, and Hazard has not established that only the state court in Case No. CV-2008-6073 could hear such requests. Indeed, in denying a motion to reconsider its dismissal of that case, the state court stated that "Upon the Arbitrator's rendering of an award, either party may apply to the court seeking to either confirm the award under Idaho Code § 7-911 or vacate the award under Idaho Code § 7-912; *irrespective of a dismissal of the underlying court case*." Adv. Doc. No. 63-5 at 2 (emphasis added).

Fundamentally, the arbitration was at a standstill, but it was not dismissed or concluded. Plaintiffs' claims asserted and still pending within the arbitration constitute claims under § 101(5)(A), notwithstanding that they are disputed and unliquidated.

### 2. Plaintiffs can assert this dischargeability action against Hazard

Whatever claims against Hazard individually that were remaining before the Arbitrator as of his recusal are "claims" of Plaintiffs in the bankruptcy sense. They are thus justiciable in a § 523(a) action.[12]

This adversary proceeding is limited to adjudication of the

---

[12] Section 523(a) states "[a] discharge under [§] 727(b) . . . of this title does not discharge an individual debtor from any debt . . . ." The Code defines "debt" as "liability on a claim." § 101(12). This Court can determine and establish the amount of a debtor's liability in the process and context of adjudicating whether such debt is nondischargeable. *In re Frantz*, 2015 WL 1778068, *13 (Bankr. D. Idaho Apr. 16, 2015) (citing *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 867–70 (9th Cir. 2005), and *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017–18 (9th Cir. 1997); other citations omitted). This Court has exclusive jurisdiction to hear § 523(a)(2), (4) and (6) cases. *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1043 (9th Cir. 2014).

MEMORANDUM OF DECISION - 12

nondischargeability of debts asserted by Plaintiffs in the arbitration and still pending in that arbitration at the time of the bankruptcy filing. The parameters of those "claims" is not entirely clear. This Court stated in *Hazard I* that "[t]he parties have not provided the Court . . . a summary of issues remaining before the arbitrator." *Id.* at *7. However, the precise identification of those claims is not required in order to deal with the present Motion, which seeks preemptively to bar any and all such issues from adjudication. Hazard's assertion of such a bar is found not well taken.

## CONCLUSION

The Motion brought by Hazard will be denied. The Court will enter an order consistent with this Decision.

DATED: December 21, 2015



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 13